Jack Silver, Esq. SBN #160575
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel.    (707) 528-8175
Fax.    (707) 528-8675
lhm28843@sbcglobal.net

Attorneys for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL M. GHOLAMI, dba A & M MINI MART; MANSOUR SEPEHR, dba SOMA ENVIRONMENTAL ENGINEERING, INC., DOES 1-10, Inclusive,<br><br>Defendants | **CASE NO.:**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, RESTITUTION AND REMEDIATION** (Environmental - Resource Conservation and Recovery Act, 42 U.S.C. 6901, et seq.) |

NOW COMES Plaintiff, NORTHERN CALIFORNIA RIVER WATCH (hereafter, "RIVER WATCH") by and through its attorneys, and for its complaint against defendants, MICHAEL M. GHOLAMI dba A & M MINI MART, MANSOUR SEPEHR dba SOMA ENVIRONMENTAL ENGINEERING, INC. and DOES 1-10, Inclusive, states as follows:

## I.  INTRODUCTION

1.    This is a civil suit brought against defendants under the citizen suit enforcement provisions of the Resource Conservation and Recovery Act, (hereafter, " RCRA") 42 U.S.C. § 6901 et seq. , and California law governing the Underground Storage of Hazardous Substances: California Heath & Safety Code § 25280 et seq.

Complaint for Injunctive Relief                    1

This complaint seeks relief for defendants' discharge of pollution from the current retail gasoline station facilities and properties located at 440 Hearn Avenue, Santa Rosa, Sonoma County, California (hereafter, "Facilities") into the waters of the State of California and the United States in violation of the above-enumerated statutes and laws.

2.    By this Complaint RIVER WATCH seeks:

    a.    To enjoin defendants from discharging pollutants from the Facilities into the ground and surface waters surrounding and downstream of the Facilities;

    b.    A court order directing defendants to comply with the substantive and procedural requirements of the above enumerated statutes and laws;

    c.    A court order directing defendants to pay civil penalties or establish remediation projects in lieu of penalties for violations of the above enumerated statutes and laws, and,

    d.    A court order directing defendants to reimburse RIVER WATCH for its reasonable costs of suit, including attorney's fees, as allowed under § 7002(e) of RCRA, 42 U.S.C. § 6972(e).

## II. JURISDICTION

3.    This Court has subject matter jurisdiction over all Federal causes of action in this Complaint pursuant to RCRA §7002(a) and §7002(b), 42 U.S.C. § 6972(a) and § 6972(b) and 28 U.S.C. § 1221 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States). This Court has supplemental jurisdiction over all State-based causes of action in this Complaint pursuant to 28 U.S.C. §1367, as those claims form part of the same case or controversy as the Federal causes of action.

4.    On or about May 25, 2007, RIVER WATCH provided notice of defendants' violations of RCRA, and of RIVER WATCH's intent to file suit against defendants (hereafter, "RCRA Notice") to the Administrator of the United States Environmental Protection Agency (hereafter, "EPA"), the Administrator of the EPA - Region IX, the Executive Director of the State Water Resources Control Board, the Executive Director of the California Integrated Waste

1    Management Board, and to defendants as required by RCRA. A true and correct copy of the

2    RCRA Notice is attached hereto as Exhibit A and fully incorporated into this Complaint.

3    5.    Members and supporters of RIVER WATCH reside in the vicinity of, derive livelihoods

4    from, own property near, and/or recreate on, in or near, and/or otherwise use, enjoy and benefit

5    from the affected watershed area and associated natural resources into which defendants

6    discharge, or by which defendants' operations adversely affect the interests of those supporters

7    and members, in violation of the above-enumerated laws or statutes. The health, economic,

8    recreational, aesthetic and environmental interests of RIVER WATCH's members may be, have

9    been, are being, and will continue to be adversely affected by defendants' unlawful violations

10   of the above-enumerated laws or statutes. RIVER WATCH contends there exists an injury in

11   fact to its members, causation of that injury by the conduct of defendants complained of herein,

12   and a likelihood that the requested relief will specifically redress that injury. RIVER WATCH,

13   through its members, has standing to bring this action. A copy of this Complaint shall be

14   provided to the United States Attorney General, the Administrator of the United States EPA, and

15   the Attorney General of California.

16                        III.  **INTRADISTRICT ASSIGNMENT**

17   6.    The basis for assignment of this case to the Northern District of California, pursuant to

18   RCRA  §7002(a) and §7002(b), 42 U.S.C. § 6972 (a) and § 6972(b), is that defendants'

19   Facilities and operations at the Facilities which are the subject of this Complaint are located in

20   this District.

21                              IV.  **THE PARTIES**

22   7.    RIVER WATCH is a 501(c)(3) non-profit public benefit corporation duly organized

23   under the laws of the State of California. Its headquarters are located in Sebastopol, Sonoma

24   County, California. RIVER WATCH is dedicated to protecting, enhancing and helping to restore

25   the waters of Northern California, including its drinking water sources, ground water, rivers,

26   creeks and tributaries. Many of RIVER WATCH's members live in areas affected by

27   defendants' pollution as alleged in this Complaint. Said members have an interest in the affected

28

Complaint for Injunctive Relief                    3

watersheds which is or may be adversely affected by defendants' violations of RCRA as set forth in this Complaint. Said members use the affected watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Furthermore, the relief sought will specifically redress the injuries in fact, and the likelihood of future injuries and interference with the interests of the members of RIVER WATCH.

8.     RIVER WATCH is informed and believes and on said information and belief alleges that at all times mentioned herein, defendant MICHAEL GHOLAMI is and was an individual residing in the State of California, with gasoline retail operations registered with the State of California, doing business in Santa Rosa, California as A & M MINI MART at 440 Hearn Avenue, Santa Rosa, Sonoma County, California. Said defendant will be referred to hereinafter as "GHOLAMI".

9.     RIVER WATCH is informed and believes and on said information and belief alleges that at all times mentioned herein, defendant MANSOUR SEPEHR is and was the Principal and President of SOMA ENVIRONMENTAL ENGINEERING, INC., located and doing business at 6620 Owens Drive, Suite A, Pleasanton, Alameda County, California; and, that MANSOUR SEPEHR dba SOMA ENVIRONMENTAL ENGINEERING, INC. provided engineering services to the defendant MICHAEL GHOLAMI dba A & M MINI MART and the Facilities. Said defendant will be referred to hereinafter as "SOMA".

10.     RIVER WATCH is informed and believes and on said information and belief alleges that at all times mentioned herein, Defendants DOES 1-10, inclusive, respectively, were and are persons, partnerships, corporations and entities, who are, or were, responsible for, or in some way contributed to, the violations of RCRA which are the subject of this Complaint, or are, or were, responsible for the maintenance, supervision, management, operations, or insurance coverage of the Facilities. The names, identities, capacities, and functions of DOES 1-10, inclusive, are presently unknown to RIVER WATCH. RIVER WATCH shall seek leave of

court to amend this Complaint to insert the true names of said DOES when the same have been ascertained.

## V. STATEMENT OF FACTS

11.    Defendant GHOLAMI has owned, operated and/or leased the Facilities since at least the late 1980's according to information available to RIVER WATCH.

12.    Defendant GHOLAMI has stored and/or currently stores large quantities of petroleum products in underground storage tanks (hereafter, "USTs") at the Facilities. In early 1990, petroleum contamination was detected in soil and groundwater beneath the Facilities. Subsequent investigation indicated that the contamination is attributable to leakage from USTs and piping systems, surface spills and/or poor maintenance or operational practices.

13.    Regulatory agencies have ordered GHOLAMI to investigate and remediate petroleum contamination at the Facilities following discovery of petroleum releases thereon. GHOLAMI has conducted some investigative and remedial work at the Facilities in response to the agencies' directives; however, significant levels of petroleum contamination remain in soil and groundwater beneath and adjacent to the Facilities.

14.    Regulatory agencies have designated surface and ground waters in this area of Sonoma County, California as capable of supporting domestic supply, and have established maximum contaminant levels for petroleum constituents in surface and ground waters.

15.    Benzene and toluene are known carcinogens and/or reproductive toxins, and have been listed chemicals under Proposition 65 since at least 1991. Surface and groundwater at the Facilities are potential sources of drinking water under applicable Regional Water Quality Control Board, Water Quality Control Plans also known as Basin Plans. In the course of doing business GHOLAMI has discharged benzene and toluene to surface and groundwater at the Facilities on a daily basis since at least approximately April of 1990.

16.    GHOLAMI has used and/or stored petroleum at the Facilities in a manner which has allowed significant quantities of hazardous petroleum constituents, including MTBE, to be discharged to soil and groundwater beneath the Facilities and beneath adjacent properties.

Complaint for Injunctive Relief                    5

17.     GHOLAMI has conducted some site investigations and remedial work at the Facilities. Based upon current levels of contamination, however, GHOLAMI has been unsuccessful in abating the contamination. To date, the levels of TPHg, benzene, toluene, ethylbenzene, and xylenes remain high above the allowable Maximum Contaminant Levels and/or Water Quality Objectives adopted by the Regional Water Quality Control Board for said constituents, creating an imminent and substantial endangerment to public health and the environment. Significant quantities of MTBE are also being detected in soil and groundwater beneath the Facilities and adjacent properties, creating an imminent and substantial endangerment to public health and the environment.

18.     The discharges by GHOLAMI as alleged in the RCRA Notice are both knowing and intentional. GHOLAMI presently uses, stores and sells petroleum products at the Facilities, and in the past has used, stored and sold these products at the Facilities, which are known to contain benzene, toluene, TPHg, ethlybenzene, xylenes, and/or MTBE, and intends or has intended that such products be sold to and used by the public.  GHOLAMI has known of the contamination at the Facilities since at least 1990, and is also aware that failing to remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to the Facilities, and to continually contaminate and re-contaminate actual and potential sources of drinking water.

19.     The violations of RCRA as alleged in this Complaint are a major cause of the continuing decline in water quality, and a continuing threat to existing and future drinking water supplies in Northern California. With every discharge, groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned as a safe source of drinking water.

20.     Defendant has since the year 2000 participated in the monitoring and attempted remediation of the soil and groundwater contamination at and around the Facilities.  RIVER WATCH contends, however, that the extent of SOMA's operations have been ineffective, and severely substandard when compared with the standard of care of environmental professionals

Complaint for Injunctive Relief                              6

1　in the State of California, representing gross mis-management of GHOLAMI's resources and

2　the California Underground Storage Tank Fund. RIVER WATCH further contends that

3　SOMA's operations with regard to GHOLAMI most importantly have failed to abate the extent

4　of contamination and pollution at the Facilities, have negligently allowed the further migration

5　of petroleum hydrocarbons into the soil and groundwater of the State, and that such migration

6　threatens surface waters in the City of Santa Rosa area.

7　　　　　　　　　　**VI. FIRST CLAIM FOR RELIEF**

8　　　　　**Violation of RCRA §7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A)**

9　21.　　RIVER WATCH incorporates the allegations set forth above in paragraphs 1 through 20

10　and Exhibit A as though fully set forth herein. RIVER WATCH is informed and believes, and

11　on said information and belief alleges as follows:

12　22.　　RCRA §7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A), provides that any person may

13　commence a civil action against any person or governmental entity alleged to be in violation of

14　any permit, standard, regulation, condition, requirement, prohibition, or order which has become

15　effective pursuant to RCRA. Civil penalties may be assessed against any person or entity in

16　violation of such permits, etc. pursuant to RCRA, under the provisions of 42 U.S.C. § 6928 (a)

17　and 42 U.S.C. § 6928 (g).

18　23.　　The underground storage tanks owned and operated by GHOLAMI on the Facilities are

19　regulated by the North Coast Regional Water Quality Control Board and/or the Sonoma County

20　Department of Health. The North Coast Regional Water Quality Control Board has imposed

21　remediation and monitoring requirements to ensure compliance with the RCRA Underground

22　Storage Tank program.

23　24.　　RIVER WATCH is informed and believes, and on said information and belief alleges

24　alleges, that GHOLAMI and SOMA have failed to comply with the statutory and regulatory leak

25　prevention, leak detection, monitoring, and remediation requirements imposed under RCRA and

26　described in the RCRA Notice attached as Exhibit A, and that these regulatory failures include

27　the following:

28

a. Failure to prevent a release, in violation of 40 CFR §§ 280.30, 280.31 and California health & Safety Code §§ 25292.1(a) - (c), 25292.3(a) and (b).

b. Failure to properly detect and monitor releases, in violation of 40 CFR §§ 280.40 - 280.44 and California Health & Safety Code § 25292.

c. Failure to properly report and keep records of the release, in violation of 40 CFR §§ 280.34, 280.50, 280.52, 280.53, 280.63(b) and California Health & Safety Code §§ 25289, 25293 and 25295(a)(1).

d. Failure to take proper corrective action, in violation of 40 CFR §§ 280.53, 280.60 - 280.66 and California Health & Safety Code § 25295(a)(1).

25.    The continuing failure by GHOLAMI and SOMA to effectively remediate the on-going contamination at the Facilities will irreparably harm RIVER WATCH and its members, for which harm RIVER WATCH and its members have no plain, speedy or adequate remedy at law.

WHEREFORE, RIVER WATCH prays judgment against GHOLAMI and SOMA as set forth hereafter.

## VII.  SECOND CLAIM FOR RELIEF

### Violation of §7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B)

26.    RIVER WATCH incorporates the allegations set forth above in paragraphs 1 through 25 and Exhibit A as though fully set forth herein. RIVER WATCH is informed and believes, and based on such information and belief alleges:

27.    RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action against any person or governmental entity including a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment. Civil penalties may be assessed against any person or entity in violation of this section, under the provisions of RCRA, 42 U.S.C. § 6928 (a) and 42 U.S.C. § 6928 (g). The RCRA Underground Storage Tank regulatory program is adopted and implemented in the

Complaint for Injunctive Relief          8

State of California under the provisions governing the Underground Storage of Hazardous Substances (California Health & Safety Code § 25280 et seq.).

28.    GHOLAMI owns and operates the Facilities at which he stores or has stored, and transfers or has transferred, gasoline, diesel, fuel oil and mixed oils.

29.    The Facilities have underground storage tanks which are leaking or have leaked petroleum chemicals including benzene, toluene, TPHg, ethylbenzene, xylenes, and MTBE into groundwater; or, petroleum products have been washed off the Facilities into nearby surface waters.

30.    Petroleum products are known to be hazardous to the environment, and if released into the environment in sufficient quantity pose an imminent and substantial risk to public health and to the environment.    Chemicals within these petroleum products such as benzene and toluene are known carcinogens and/or reproductive toxins, and if released into the environment in sufficient quantity pose an imminent and substantial risk to public health and to the environment in general.

31.    For purposes of RCRA, petroleum products and their constituents: TPHg, benzene, toluene, ethylbenzene, xylenes, and MTBE, are both "solid wastes" and "hazardous wastes" within the meaning of the statute.

32.    RIVER WATCH is informed and believes, and thereon alleges, that amounts of petroleum products and their constituents, TPHg, benzene, toluene, ethylbenzene, xylenes, and/or MTBE, released by GHOLAMI at the Facilities are in sufficient quantity to pose an imminent and substantial risk to both the environment and to human health.

33.    Continuing acts or failure to act by GHOLAMI and SOMA to address these violations will irreparably harm RIVER WATCH and its members, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, RIVER WATCH prays judgment against GHOLAMI and SOMA as set forth hereafter.

Complaint for Injunctive Relief                    9

# VIII.  RELIEF REQUESTED

Plaintiff, NORTHERN CALIFORNIA RIVER WATCH, respectfully requests this Court grant the following relief:

34.    Declare defendants GHOLAMI and SOMA to have violated and to be in violation of the RCRA for discharging petroleum products and constituents which are known carcinogens and/or reproductive toxins in sufficient quantity to pose an imminent and substantial risk to health and to the environment;

35.    Enjoin GHOLAMI and SOMA from discharging petroleum products and constituents from the Facilities, which petroleum products and constituents pose an imminent and substantial risk to health and the environment;

36.    Order GHOLAMI and SOMA to comply with the substantive and procedural requirements of RCRA;

37.    Order GHOLAMI and SOMA to pay civil penalties, pursuant to RCRA provisions, including 42 U.S.C. § 6928 (a) and 42 U.S.C. § 6928 (g), and/or to pay for remediation projects to redress them harm caused by said defendants' violations of RCRA. Each of the above-described violations of RCRA subjects the violator to a civil penalties on a per day per violation basis. Civil penalties may be assessed for violations occurring within five (5) years prior to the initiation of a citizen enforcement action;

38.    Enter a judgment that GHOLAMI and SOMA are required to pay civil penalties and exemplary damages according to proof.

39.    Enter such preliminary injunctions, permanent injunctions or other orders pursuant to RCRA requiring GHOLAMI and SOMA to enjoin and abate the nuisance resulting from the discharge and release of petroleum products and constituents from the Facilities and the migration of petroleum products and constituents into soil and groundwater beneath the Facilities and adjacent properties.

40.   Impose injunctive relief requiring GHOLAMI to immediately investigate, access and categorize the extent of pollution and implement the "best available technology" to remediate pollution at the Facilities;

41.   Impose injunctive relief requiring GHOLAMI and SOMA to immediately commence complete remediation of the contamination at and adjacent to the Facilities once the contaminant plumes have been adequately characterized;

42.   Award costs (including reasonable attorney, expert, witness, and consultant fees) to RIVER WATCH as authorized by RCRA; and,

43.   Award such other relief as this Court may deem appropriate.

DATED: November 20, 2007                    Respectfully submitted,

                                            LAW OFFICE OF JACK SILVER

                                            JACK SILVER
                                            Attorney for Plaintiff
                                            NORTHERN CALIFORNIA RIVER WATCH

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469          Santa Rosa, California 95402
Phone 707-528-8175    Fax 707-528-8675
lhm28843@sbcglobal.net


**Via Registered Mail**
**Return Receipt Requested**

May 25, 2007

Michael M. Gholami, Owner
A&M Mini Mart
440 Hearn Avenue
Santa Rosa, CA 95404

Mansour Sepehr, Ph.D., P.E., President
SOMA Environmental Engineering, Inc.
6620 Owens Drive, Suite A
Pleasanton, CA 94588-3334

> **Re:    Notice of Violations and Intent to File Suit under the**
> **Resource Conservation and Recovery Act**

Dear Mssrs. Gholami and Sepehr:

On behalf of Northern California River Watch ("River Watch"), I am providing statutory notification to both of you and to the A & M Mini-Mart, located at 440 Hearn Avenue, Santa Rosa, California (collectively hereafter, the "Mini Mart"), of continuing and ongoing violations of the Federal Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6901 et seq., in conjunction with the continuing remediation operations at this former Northern California gasoline service station site which has been or are currently owned or operated by Michael M. Gholami and/or his employees, agents, franchisees or assigns.

River Watch hereby notifies the Mini Mart that at the expiration of the appropriate notice periods under RCRA, River Watch intends to commence a civil action against the Mini Mart on the following grounds:

1.    The Mini Mart's use and storage of petroleum products at its gasoline station site as identified in this Notice has and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to

RCRA regarding storage of petroleum in underground storage tanks ("USTs") [42 U.S.C. § 6972(a)(1)(A)];

2.    The Mini Mart's operations at the gasoline station site as identified in this Notice have caused petroleum contamination of soil and groundwater which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

River Watch hereby also notifies Mansour Sepehr that his involvement in the management of the delayed remediation of this UST site also has caused or contributed to the contamination of soil and groundwater which (1) violates permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to RCRA regarding the storage of petroleum in USTs [42 U.S.C. § 6972(a)(1)(A)]; and/or (2) has caused or contributed to petroleum contamination of soil and ground water which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

The language of 42 U.S.C. § 6972(a)(1)(B) states as follows:

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf –
....

(B) against *any person,* including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment....

## BACKGROUND

The site at issue, is located on the corner of Hearn Avenue and Corby Avenue in a mixed residential and commercial area of Santa Rosa that is less than 400 feet from U.S. Hwy 101. It will hereinafter be referred to as "the Site". The Site has operated as a gasoline service station since the mid-1960's. In April of 1990, one 6,000 gallon UST and two 10,000 gallon USTs were removed from the north side of the Site. At that time soil samples revealed the presence of petroleum hydrocarbon contamination resulting

from an unauthorized petroleum release.. Based upon records on file with the Regional Water Quality Control Board ("RWQCB"), no monitoring or other remediation activity commenced at the Site for approximately 3 ½ years following this discovery. Then, in September of 1993, soil borings and monitoring wells were installed. In November of 1993, TPHg and BTEX contamination levels were found to be as high as 69,000 ug/l, 13,000 ug/l, 14,000 ug/l, 4,000 ug/l, and 18,000 ug/l, respectively.

Over the next four years nothing more than further monitoring was conducted. In December of 1997, additional monitoring wells were installed. By this time TPHg and BTEX contaminate levels had increased to 120,000 ug/l, 19,000 ug/l, 23,000 ug/l, 2,200 ug/l and 18,000 ug/l, respectively.

By March of 2001, plume characterization efforts were commenced by means of hydropunching.. This process revealed the presence of six, water-bearing zones beneath the Site. More monitoring wells were installed to measure contaminant levels in each of these water-bearing zones, which ranged from between 8 feet to 123 feet below surface grade, and which have varying directional flows. Finally, in the Fall of 2002, vapor extraction wells were installed for the purpose of commencing remediation efforts.

However, in June of 2003, free product (petroleum hydrocarbons) was discovered in one of the monitoring wells, prompting enhanced leak detection investigations. Finally, by early 2005, following RWQCB approval, a trailer-mounted remediation device was moved to the Site and remediation efforts (a "pump and treat" system using activated carbon) were implemented. Treated ground water below certain action levels was allowed to be discharged into the City's sewer system. Although over 994,000 gallons of ground water have been processed through this system, less than 100 pounds of petroleum hydrocarbons have been captured and removed by this process.

As of the last monitoring report which reported contamination levels tested in August of 2006, the Site continues to have very high levels of TPHg and BTEX constituents in soil and ground water beneath and around the Site. Levels from the August analysis are as high as 30,400 ug/l for TPHg, 10,200 ug/l for benzene, 7,230 ug/l for toluene, 2,950 ug/l for ethylbenzene, and 1,580 ug/l for xylenes. MTBE levels seem highest to the north of the Site, adjacent to the Shell service station which is across Hearn Avenue from the Site. Based upon engineering reports, it seems apparent that the plumes from the Shell station and the Site have commingled.

Overall, the extent of these concentrations reflect that the consultant engineering efforts have had very little impact upon the contamination at issue. The current contaminant levels are far in excess of California's maximum contaminant levels ("MCLs") for these products or constituents.

At the present time, the pollution of the soil and ground water remains unremediated, and River Watch presumes that hydrocarbon contamination continues to seep into ground water and possibly surface waters of the Unites States in violation of both RCRA and the Clean Water Act. According to the latest documentation from RWQCB files, there is no estimated end in sight for the engineering work which needs to be accomplished. Reports from the Mini Mart's consultants fail to indicate the amounts of petroleum hydrocarbons which remain under and around the Site. In addition to achieving complete delineation of the contaminant plume, River Watch believes the Mini Mart must take more proactive efforts to protect against surface water impact from this plume, as well as conduct current sensitive receptor and preferential pathway surveys. There is already confirmation in the current consultant's reports that one sewer line at the Site has acted as a preferential pathway for some of this contamination.

Accordingly, this is a case in which River Watch must rely upon federal statutory provisions which authorize citizen suits where regulatory agency processes have not resulted in viable and timely solutions to the petroleum contaminant problems in our Northern California communities.

## REGULATORY STANDARDS

Water Quality Objectives exist to ensure protection of the beneficial uses of water. Several beneficial uses of water exist, and the most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions need to be considered that evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels. Existing and potential beneficial uses of area groundwater include domestic, agricultural, industrial and municipal water supply.

The RWQCB has adopted a Water Quality Control Plan ("Basin Plan") which designates all surface and groundwater within the North Coast and San Francisco Bay regions as capable of supporting domestic water supply. The RWQCB has adopted MCLs and/or Water Quality Objectives ("WQOs") for petroleum constituents in surface and groundwater within the region of 50 ug/l for TPHg, 1 ug/l for benzene, 150 ug/l for toluene and 5 ug/l for MTBE.

Petroleum and petroleum constituents have been characterized as "hazardous waste" and as "solid waste" within the meaning of RCRA provisions. Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of petroleum and petroleum constituents and products.

## VIOLATIONS

### 1. PERMITS, STANDARDS AND REGULATIONS
### [42 U.S.C. § 6972(a)(1)(A)]

Between approximately April of 1990 and the date of this Notice, the Mini Mart and/or its engineering consultants have caused or permitted, cause or permit, or threaten to cause or permit, petroleum contaminants, petroleum constituents and other hazardous waste to be discharged or deposited from the Site where it is, or probably will be, discharged into waters of the State and now creates, or threatens to create, conditions of pollution or nuisance. The discharges and threatened discharges of such petroleum waste are deleterious to the beneficial uses of water, and are creating and threaten to create various conditions of pollution and nuisance which will continue unless the discharges and threatened discharges are permanently abated.

Provisions of RCRA govern the use and operation of USTs used for storage of petroleum products (subchapter IX, 42 U.S.C. § 6991 et seq.).  The RCRA UST regulatory program is adopted and implemented in California under the State Underground Storage of Hazardous Substance Account Act (California Health & Safety Code § 25280 et seq.).

Past or current violations of RCRA authorize the assessment of civil penalties. The enforcement provisions of 42 U.S.C. §§ 6928(a) and 6928(g) provide for penalties when conditions of hazardous waste disposal have been alleged – as River Watch has alleged in this Notice with respect to the Site.  Accordingly, under these provisions, persons or entities violating RCRA are subject to substantial liability to the United States on a per-day basis.

Between approximately April of 1990 and the date of this Notice, the Mini Mart's use and storage of petroleum at the Site has allowed significant quantities of hazardous petroleum constituents to be released or discharged into soil and ground water in violation of provisions of the RCRA and the California UST regulatory programs including, but not limited to, provisions governing general operating requirements for USTs, release detection and prevention requirements, release reporting and investigation requirements, and release response and corrective action requirements.  Specifically, the Mini Mart is responsible for the following statutory violations:

1.      Failure to prevent a release, in violation of 40 CFR §§ 280.30, 280.31 and California Health & Safety Code §§ 25292.1(a) - (c), 25292.3(a) and (b).

2.      Failure to properly detect and monitor releases, in violation of 40 CFR
        §§ 280.40 - 280.44 and California Health & Safety Code § 25292.

3.       Failure to properly report and keep records of the release, in violation of
        40 CFR §§ 280.34, 280.50, 280.52, 280.53, 280.63(b) and California Health
        & Safety Code §§ 25289, 25293 and 25295(a)(1).

4.      Failure to take proper corrective action, in violation of 40 CFR §§
        280.53, 280.60 - 280.66 and California Health & Safety Code § 25295(a)(1).


## 2.   IMMINENT AND SUBSTANTIAL ENDANGERMENT
### [42 U.S.C. § 6972(a)(1)(B)]

Between approximately April of 1990 and the date of this Notice, the Mini Mart
used and stored, and continues to use and store, petroleum products at the Site in a
manner which has allowed significant quantities of hazardous petroleum constituents to
be discharged to soil and ground water beneath the Site and beneath adjacent properties.
The contaminant levels of TPHg, benzene, toluene, and MTBE in ground water at the Site
are significantly greater than the allowable MCL and/or WQO for said constituents.
Benzene, MTBE, TAME, and TBA are known or suspected carcinogens. Toluene is a
reproductive toxin. Ethylbenzene, methanol and xylene are live toxins. All are known to
harm both plants and animals. In their concentration at this location, these pollutants are
creating an imminent and substantial endangerment to public health and the environment.

The violations alleged in this Notice are knowing and intentional in that the Mini
Mart in the past has used, stored and sold petroleum products which are known to contain
hazardous substances, and in that it intended that such products be sold to and used by the
public. The Mini Mart and/or its engineering consultants have known of the
contamination at the Site since at least April of 1990, and have also known that failing to
promptly remediate the pollution allows the contamination to migrate through soil and
groundwater at and adjacent to the Site, and to continually contaminate and re-
contaminate actual and potential sources of drinking water in addition to surface waters.

Violations of RCRA of the type alleged in this Notice are a major cause of the
continuing decline in water quality and pose a continuing threat to existing and future
drinking water supplies of Northern California. With every discharge, ground water
supplies are contaminated. These discharges can and must be controlled in order for the
groundwater supply to be returned to a safe source of drinking water.

In addition to the violations set forth above, this Notice is intended to cover all violations of RCRA by the Mini Mart evidenced by information which becomes available to River Watch after the date of this Notice.

## CONTACT INFORMATION

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and ground water in Northern California. River Watch is organized under the laws of the State of California. Its address is 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA, 95472; its telephone number is (707) 824-4372.

The violations of the Mini Mart and/or its engineering consultants as set forth in this Notice affect the health and enjoyment of members of River Watch who reside and recreate in the affected watershed areas. The members of River Watch use the watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shellfish harvesting, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource are conditions specifically impaired by these violations of RCRA. In some cases, the economic interests of individual River Watch members have been directly impaired by the violations of the Mini Mart as set forth in this Notice.

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. (707) 528-8175
Fax (707) 528-8675

## NOTICE

RCRA requires that sixty (60) days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under RCRA, a private party must give notice of the violation to the alleged violator, the Administrator of the U.S. Environmental Protection Agency and the State in which the violation is alleged to have occurred [42 U.S.C. § 6972(b)(1)(A)]. RCRA also requires that a private party provide ninety (90) days prior notice to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the

violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment. [42 U.S.C. § 6972(b)(2)(A)].

River Watch believes this Notice sufficiently states grounds for filing suit against the Mini Mart under the statutory and regulatory provisions of RCRA. At the close of the notice periods or shortly thereafter, River Watch intends to file a suit against the Mini Mart (including SOMA Environmental Engineering, Inc.)under RCRA provisions for each of the violations as alleged herein, and with respect to the existing conditions the Site.

During the 90 day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced in this Notice. If the Mini Mart wishes to pursue such discussions in the absence of litigation, we would encourage you to initiate such discussions immediately so that we might be on track to resolving the issues raised by River Watch in this Notice before the end of the notice period. River Watch will not delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours,

Jack Silver

cc:

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
401 M Street, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne St.
San Francisco, CA 94105

Celeste Cantú, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

May 25, 2007 - Notice of Violations and Intent to File Suit   - Page 8 of 9

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 "I" Street
Sacramento, CA 95814

Station Operator
A& M Mini Mart
440 Hearn Avenue
Santa Rosa, CA 95407

Samantha Sepehr
Registered Agent
SOMA Environmental Engineers, Inc.
45 Red Bud Court
Danville, CA 94526

Law Offices of Hans W. Herb
Post Office Box 970
Santa Rosa, CA 95402