# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469   Santa Rosa, California 95402
Phone 707-528-8175   Fax 707-528-8675
lhm28843@sbcglobal.net

**Via Registered Mail
Return Receipt Requested**

May 25, 2007

Michael M. Gholami, Owner
A&M Mini Mart
440 Hearn Avenue
Santa Rosa, CA 95404

Mansour Sepehr, Ph.D., P.E., President
SOMA Environmental Engineering, Inc.
6620 Owens Drive, Suite A
Pleasanton, CA 94588-3334

   Re: **Notice of Violations and Intent to File Suit under the
      Resource Conservation and Recovery Act**

Dear Mssrs. Gholami and Sepehr:

  On behalf of Northern California River Watch ("River Watch"), I am providing statutory notification to both of you and to the A & M Mini-Mart, located at 440 Hearn Avenue, Santa Rosa, California (collectively hereafter, the "Mini Mart"), of continuing and ongoing violations of the Federal Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6901 et seq., in conjunction with the continuing remediation operations at this former Northern California gasoline service station site which has been or are currently owned or operated by Michael M. Gholami and/or his employees, agents, franchisees or assigns.

  River Watch hereby notifies the Mini Mart that at the expiration of the appropriate notice periods under RCRA, River Watch intends to commence a civil action against the Mini Mart on the following grounds:

1. The Mini Mart's use and storage of petroleum products at its gasoline station site as identified in this Notice has and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to

RCRA regarding storage of petroleum in underground storage tanks ("USTs") [42 U.S.C. § 6972(a)(1)(A)];

2.  The Mini Mart's operations at the gasoline station site as identified in this Notice have caused petroleum contamination of soil and groundwater which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

River Watch hereby also notifies Mansour Sepehr that his involvement in the management of the delayed remediation of this UST site also has caused or contributed to the contamination of soil and groundwater which (1) violates permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to RCRA regarding the storage of petroleum in USTs [42 U.S.C. § 6972(a)(1)(A)]; and/or (2) has caused or contributed to petroleum contamination of soil and ground water which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

The language of 42 U.S.C. § 6972(a)(1)(B) states as follows:

> Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf –
>
> ....
>
> (B) against *any person*, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment....

## BACKGROUND

The site at issue, is located on the corner of Hearn Avenue and Corby Avenue in a mixed residential and commercial area of Santa Rosa that is less than 400 feet from U.S. Hwy 101. It will hereinafter be referred to as "the Site". The Site has operated as a gasoline service station since the mid-1960's. In April of 1990, one 6,000 gallon UST and two 10,000 gallon USTs were removed from the north side of the Site. At that time soil samples revealed the presence of petroleum hydrocarbon contamination resulting

from an unauthorized petroleum release.. Based upon records on file with the Regional Water Quality Control Board ("RWQCB"), no monitoring or other remediation activity commenced at the Site for approximately 3 ½ years following this discovery. Then, in September of 1993, soil borings and monitoring wells were installed. In November of 1993, TPHg and BTEX contamination levels were found to be as high as 69,000 ug/l, 13,000 ug/l, 14,000 ug/l, 4,000 ug/l, and 18,000 ug/l, respectively.

Over the next four years nothing more than further monitoring was conducted. In December of 1997, additional monitoring wells were installed. By this time TPHg and BTEX contaminate levels had increased to 120,000 ug/l, 19,000 ug/l, 23,000 ug/l, 2,200 ug/l and 18,000 ug/l, respectively.

By March of 2001, plume characterization efforts were commenced by means of hydropunching.. This process revealed the presence of six, water-bearing zones beneath the Site. More monitoring wells were installed to measure contaminant levels in each of these water-bearing zones, which ranged from between 8 feet to 123 feet below surface grade, and which have varying directional flows. Finally, in the Fall of 2002, vapor extraction wells were installed for the purpose of commencing remediation efforts.

However, in June of 2003, free product (petroleum hydrocarbons) was discovered in one of the monitoring wells, prompting enhanced leak detection investigations. Finally, by early 2005, following RWQCB approval, a trailer-mounted remediation device was moved to the Site and remediation efforts (a "pump and treat" system using activated carbon) were implemented. Treated ground water below certain action levels was allowed to be discharged into the City's sewer system. Although over 994,000 gallons of ground water have been processed through this system, less than 100 pounds of petroleum hydrocarbons have been captured and removed by this process.

As of the last monitoring report which reported contamination levels tested in August of 2006, the Site continues to have very high levels of TPHg and BTEX constituents in soil and ground water beneath and around the Site. Levels from the August analysis are as high as 30,400 ug/l for TPHg, 10,200 ug/l for benzene, 7,230 ug/l for toluene, 2,950 ug/l for ethylbenzene, and 1,580 ug/l for xylenes. MTBE levels seem highest to the north of the Site, adjacent to the Shell service station which is across Hearn Avenue from the Site. Based upon engineering reports, it seems apparent that the plumes from the Shell station and the Site have commingled.

Overall, the extent of these concentrations reflect that the consultant engineering efforts have had very little impact upon the contamination at issue. The current contaminant levels are far in excess of California's maximum contaminant levels ("MCLs") for these products or constituents.

At the present time, the pollution of the soil and ground water remains unremediated, and River Watch presumes that hydrocarbon contamination continues to seep into ground water and possibly surface waters of the Unites States in violation of both RCRA and the Clean Water Act. According to the latest documentation from RWQCB files, there is no estimated end in sight for the engineering work which needs to be accomplished. Reports from the Mini Mart's consultants fail to indicate the amounts of petroleum hydrocarbons which remain under and around the Site. In addition to achieving complete delineation of the contaminant plume, River Watch believes the Mini Mart must take more proactive efforts to protect against surface water impact from this plume, as well as conduct current sensitive receptor and preferential pathway surveys. There is already confirmation in the current consultant's reports that one sewer line at the Site has acted as a preferential pathway for some of this contamination.

Accordingly, this is a case in which River Watch must rely upon federal statutory provisions which authorize citizen suits where regulatory agency processes have not resulted in viable and timely solutions to the petroleum contaminant problems in our Northern California communities.

## REGULATORY STANDARDS

Water Quality Objectives exist to ensure protection of the beneficial uses of water. Several beneficial uses of water exist, and the most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions need to be considered that evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels. Existing and potential beneficial uses of area groundwater include domestic, agricultural, industrial and municipal water supply.

The RWQCB has adopted a Water Quality Control Plan ("Basin Plan") which designates all surface and groundwater within the North Coast and San Francisco Bay regions as capable of supporting domestic water supply. The RWQCB has adopted MCLs and/or Water Quality Objectives ("WQOs") for petroleum constituents in surface and groundwater within the region of 50 ug/l for TPHg, 1 ug/l for benzene, 150 ug/l for toluene and 5 ug/l for MTBE.

Petroleum and petroleum constituents have been characterized as "hazardous waste" and as "solid waste" within the meaning of RCRA provisions. Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of petroleum and petroleum constituents and products.

## VIOLATIONS

### 1. PERMITS, STANDARDS AND REGULATIONS
[42 U.S.C. § 6972(a)(1)(A)]

Between approximately April of 1990 and the date of this Notice, the Mini Mart and/or its engineering consultants have caused or permitted, cause or permit, or threaten to cause or permit, petroleum contaminants, petroleum constituents and other hazardous waste to be discharged or deposited from the Site where it is, or probably will be, discharged into waters of the State and now creates, or threatens to create, conditions of pollution or nuisance. The discharges and threatened discharges of such petroleum waste are deleterious to the beneficial uses of water, and are creating and threaten to create various conditions of pollution and nuisance which will continue unless the discharges and threatened discharges are permanently abated.

Provisions of RCRA govern the use and operation of USTs used for storage of petroleum products (subchapter IX, 42 U.S.C. § 6991 et seq.). The RCRA UST regulatory program is adopted and implemented in California under the State Underground Storage of Hazardous Substance Account Act (California Health & Safety Code § 25280 et seq.).

Past or current violations of RCRA authorize the assessment of civil penalties. The enforcement provisions of 42 U.S.C. §§ 6928(a) and 6928(g) provide for penalties when conditions of hazardous waste disposal have been alleged – as River Watch has alleged in this Notice with respect to the Site. Accordingly, under these provisions, persons or entities violating RCRA are subject to substantial liability to the United States on a per-day basis.

Between approximately April of 1990 and the date of this Notice, the Mini Mart's use and storage of petroleum at the Site has allowed significant quantities of hazardous petroleum constituents to be released or discharged into soil and ground water in violation of provisions of the RCRA and the California UST regulatory programs including, but not limited to, provisions governing general operating requirements for USTs, release detection and prevention requirements, release reporting and investigation requirements, and release response and corrective action requirements. Specifically, the Mini Mart is responsible for the following statutory violations:

1. Failure to prevent a release, in violation of 40 CFR §§ 280.30, 280.31 and California Health & Safety Code §§ 25292.1(a) - (c), 25292.3(a) and (b).

2.  Failure to properly detect and monitor releases, in violation of 40 CFR §§ 280.40 - 280.44 and California Health & Safety Code § 25292.

3.  Failure to properly report and keep records of the release, in violation of 40 CFR §§ 280.34, 280.50, 280.52, 280.53, 280.63(b) and California Health & Safety Code §§ 25289, 25293 and 25295(a)(1).

4.  Failure to take proper corrective action, in violation of 40 CFR §§ 280.53, 280.60 - 280.66 and California Health & Safety Code § 25295(a)(1).

## 2. IMMINENT AND SUBSTANTIAL ENDANGERMENT
## [42 U.S.C. § 6972(a)(1)(B)]

Between approximately April of 1990 and the date of this Notice, the Mini Mart used and stored, and continues to use and store, petroleum products at the Site in a manner which has allowed significant quantities of hazardous petroleum constituents to be discharged to soil and ground water beneath the Site and beneath adjacent properties. The contaminant levels of TPHg, benzene, toluene, and MTBE in ground water at the Site are significantly greater than the allowable MCL and/or WQO for said constituents. Benzene, MTBE, TAME, and TBA are known or suspected carcinogens. Toluene is a reproductive toxin. Ethylbenzene, methanol and xylene are live toxins. All are known to harm both plants and animals. In their concentration at this location, these pollutants are creating an imminent and substantial endangerment to public health and the environment.

The violations alleged in this Notice are knowing and intentional in that the Mini Mart in the past has used, stored and sold petroleum products which are known to contain hazardous substances, and in that it intended that such products be sold to and used by the public. The Mini Mart and/or its engineering consultants have known of the contamination at the Site since at least April of 1990, and have also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to the Site, and to continually contaminate and re-contaminate actual and potential sources of drinking water in addition to surface waters.

Violations of RCRA of the type alleged in this Notice are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of Northern California. With every discharge, ground water supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

In addition to the violations set forth above, this Notice is intended to cover all violations of RCRA by the Mini Mart evidenced by information which becomes available to River Watch after the date of this Notice.

## CONTACT INFORMATION

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and ground water in Northern California. River Watch is organized under the laws of the State of California. Its address is 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA, 95472; its telephone number is (707) 824-4372.

The violations of the Mini Mart and/or its engineering consultants as set forth in this Notice affect the health and enjoyment of members of River Watch who reside and recreate in the affected watershed areas. The members of River Watch use the watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shellfish harvesting, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource are conditions specifically impaired by these violations of RCRA. In some cases, the economic interests of individual River Watch members have been directly impaired by the violations of the Mini Mart as set forth in this Notice.

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

> Jack Silver, Esquire
> Law Office of Jack Silver
> P.O. Box 5469
> Santa Rosa, CA 95402-5469
> Tel. (707) 528-8175
> Fax (707) 528-8675

## NOTICE

RCRA requires that sixty (60) days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under RCRA, a private party must give notice of the violation to the alleged violator, the Administrator of the U.S. Environmental Protection Agency and the State in which the violation is alleged to have occurred [42 U.S.C. § 6972(b)(1)(A)]. RCRA also requires that a private party provide ninety (90) days prior notice to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the

violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment. [42 U.S.C. § 6972(b)(2)(A)].

River Watch believes this Notice sufficiently states grounds for filing suit against the Mini Mart under the statutory and regulatory provisions of RCRA. At the close of the notice periods or shortly thereafter, River Watch intends to file a suit against the Mini Mart (including SOMA Environmental Engineering, Inc.) under RCRA provisions for each of the violations as alleged herein, and with respect to the existing conditions the Site.

During the 90 day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced in this Notice. If the Mini Mart wishes to pursue such discussions in the absence of litigation, we would encourage you to initiate such discussions immediately so that we might be on track to resolving the issues raised by River Watch in this Notice before the end of the notice period. River Watch will not delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours,

Jack Silver

cc:

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
401 M Street, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne St.
San Francisco, CA 94105

Celeste Cantü, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 "I" Street
Sacramento, CA 95814

Station Operator
A& M Mini Mart
440 Hearn Avenue
Santa Rosa, CA 95407

Samantha Sepehr
Registered Agent
SOMA Environmental Engineers, Inc.
45 Red Bud Court
Danville, CA 94526

Law Offices of Hans W. Herb
Post Office Box 970
Santa Rosa, CA 95402